[No. 4360.   Decided November 12, 1902.]

ALEXANDER McNICOL, *Appellant,* v. EDWARD COLLINS *et al., Respondents.*

DECEIT — SALE OF CORPORATE STOCK — EVIDENCE — FORMER VALUES.

In an action for damages for the difference between the selling price and the actual value of corporate stock, which plaintiff alleged he had been fraudulently induced to sell at less than its real

value, evidence is inadmissible for the purpose of showing at what prices stock had been sold two years prior to the sale in question.

SAME.

Where deceit in the sale of corporate stock was charged against defendants, evidence of the purchase price of the stock two years before, at the time it was purchased for plaintiff by one of the defendants, was admissible, in connection with testimony that plaintiff had agreed to divide the stock with such defendant at the purchase price, in order to rebut the charge of deceit.

SAME — WAGES OF EMPLOYEES.

The amount of wages paid employees by a corporation is irrelevant for the purpose of establishing the value of its shares of stock.

SAME — CROSS-EXAMINATION.

Where plaintiff, in order to show confidential relations existing between himself and one of the defendants in an action founded on deceit had testified to their joint ownership of a building, it was not error to permit defendant to testify more fully upon the subject, although not involved in any way in the subject-matter of the action.

EVIDENCE — CONVERSATIONS.

Conversations had by witnesses in regard to the subject-matter of an action are inadmissible when not had in the presence of the party sought to be charged thereby.

APPEAL — PREJUDICIAL ERROR.

Where prejudicial errors of law occur upon a jury trial, it is the duty of the supreme court to reverse the case, though the court thinks it is decided correctly upon the facts in evidence.

Appeal from Superior Court, Pierce County.—Hon. Thad Huston, Judge. Reversed.

*A. R. Titlow,* for appellant.

*John C. Stallcup,* for respondents.

The opinion of the court was delivered by

Mount, J.—This is an action for damages for the difference between the price for which appellant sold 33 shares of the capital stock of the Valley Mill Company

and the actual value thereof at the time of sale, which is alleged in the complaint to be $350 per share. Appellant was the owner of 33 shares of stock in the Valley Mill Company. On October 17, 1900, he agreed to sell these shares, together with 19 other shares belonging to relatives, to one Hanson at the price of $100 per share. At that time a written contract was entered into by appellant and Hanson, by the terms of which Hanson paid $50 down and was to have until December 1, 1900, in which to pay the balance and receive a transfer of the shares. If the balance was not paid on or before December 1st, Hanson was to forfeit the $50 paid. Hanson afterwards, and a few days before the expiration of his contract, concluded he did not want the shares himself, but agreed with respondents that they might have the shares at $100 per share. He thereupon paid to appellant the balance of the purchase price, $5,150, and had the shares transferred to himself, and immediately transferred the same to respondents, who paid to Hanson the purchase price, $5,200. Respondents were stockholders in the said company, Collins being president thereof. Appellant alleges in his complaint, substantially, that at the time he agreed to sell this stock to Hanson he was ignorant of the value of the stock, and that he relied upon certain representations of respondent Collins, a confidential friend, which representations were false and fraudulent, and made for the purpose of deceiving and inducing appellant to sell the said shares at the price of $100 per share; that Hanson was a secret agent of respondents for the purpose of purchasing these shares, which fact was unknown to appellant, and that appellant, by fraud and deceit, was induced to sell his stock at much less than the real value; that the stock at the time of the sale was of the value of $350 per share. Respondents denied these allegations

of the complaint, and upon the issues made the cause was tried before the court and a jury. A verdict was returned in favor of the defendants, and the plaintiff appeals.

Errors of the trial court are assigned upon the introduction of evidence, and upon the refusal to give requested instructions, and upon instructions given. Respondents were permitted to ask several of appellant's witnesses upon cross-examination with reference to the price which they had paid for and which they had sold stock for about two years prior to the time appellant sold the stock in question. The appellant had not gone into this question on direct examination. The general rule is that the inquiry should be as to the market value of the stock at or about or within a reasonable time of the particular sale in question. Abbott's Trial Evidence (2d ed.), p. 380; 2 Rice, Evidence, p. 1308. Especially is this true where the market is variable, and conditions of the property and its value have changed. Where market value is involved, and where witnesses have fixed the market value of a particular article, the court and jury ought to be put in possession of all the facts upon which the witnesses based their judgment. A wide discretion of the trial court should therefore be allowed upon cross-examination. But this discretion should not go to the extent of permitting irrelevant evidence to be introduced where the witness has not made it the basis of value testified to by him. The conditions which affect market value are so many and varied that it is often difficult to confine the inquiry to a particular time. When sales are far apart, and conditions have not changed, it would be reasonable to suppose that the market value had remained the same in the meantime. On the contrary, where sales are near together, and conditions are rapidly changing, and the market price is there-

by affected, a sale on one day may be little or no indication of the market value a few days distant. The mere lapse of time, therefore, is not the only criterion to guide the judgment in the determination of market value. The cost of an article like stocks is no indication of its value two years subsequent, where conditions and value have changed. The cost in such cases would often be misleading and prejudicial. In this case it is practically conceded that the stock at the time of its sale by appellant to Hanson on October 17, 1900, was of greater value than when the stock was purchased by the appellant, two years before; and the effect, therefore, of admitting this evidence, would be to permit the jury to take into consideration the cost of the stock, when the cost admittedly cast no light upon its value at the time of the sale. The only effect such testimony could have would be a prejudicial effect, because it would tend to discredit the actual market value of the stock at the time of the sale. This evidence was certainly erroneously admitted. *Dietrich's v. Lincoln & N. W. R. R. Co.,* 12 Neb. 225 (10 N. W. 718); *Denver & R. G. Ry. Co. v. Schmitt,* 11 Colo. 56 (16 Pac. 842); *Bowden v. Achor,* 95 Ga. 243, 259 (22 S. E. 254); *Omaha Southern Ry. Co. v. Todd,* 39 Neb. 818, 825 (58 N. W. 289).

It is claimed as error that the respondent Collins and a witness, Walter Holly, were permitted to state what wages they were paid while working for the Valley Mill Company, some months previous to the transaction in question. We cannot see just how this evidence was relevant or material. It certainly was not material to prove any of the issues and should have been excluded.

It is also claimed as error that the same respondent was permitted to testify concerning the ownership and cost of a building in the town of Buckley some time previous to

the sale in question.   It is true, as appellant says, that the
Valley Mill Company never had anything to do with this
building.   It was erected and owned jointly by appellant
and respondent Collins.   Appellant himself, on direct ex-
amination, went into this matter quite fully, in order to
show the confidential relations existing between himself
and Collins.   It was therefore not error for the respondent
to be permitted to testify upon the same subject.   The
trial court, we think, properly limited the examination in
this respect.

It is also charged as error that the appellant, on cross-
examination, was required to state what he had paid for
this stock in 1898.   It appears from the appellant's own
evidence that the respondent Collins had purchased the 33
shares of stock in dispute for the appellant in the year
1898, with money furnished by the appellant, and that ap-
pellant had told Collins three or four times—the last time
being in March, 1900—that he would divide this stock so
that Collins and he would be even.   But Collins had re-
fused to take the stock because he did not have the money
with which to pay for the same.   Appellant also stated
that he intended to let Collins have the stock at the price
he had paid for it.   After stating these facts, the appel-
lant was then asked the question:   "What was the price
paid for that stock when Collins purchased it for you?"
This question was objected to, the objection was overruled,
and appellant answered:   "I paid $600 for 33 shares."
Question: "That was $18.18 a share, isn't it?"   Answer:
"Something like that."   This evidence was clearly incom-
petent, as we have seen above, to fix the market value of
the stock at the time appellant sold to Hanson.   But upon
the question of deceit we think it was admissible.   If re-
spondent was attempting to cheat and defraud the appel-

lant, he certainly would not pay $100 per share for stock through a secret agent, when he could purchase directly one-half of the' same shares for $18.18 per share. This was, it seems, some evidence against the accusation of fraud and deceit, and it was obtained from the appellant himself, and for the purpose stated we think was admissible.

The respondent Collins was permitted to testify to a conversation which he had with Mr. Hanson with reference to the option by which Hanson purchased the stock in question from appellant. Mr. Hanson, a witness for the respondents, was also permitted to testify what was said at the same conversation. Mr. Neely, also a witness for appellant, was permitted to testify to a conversation with respondents. These conversations occurred between the witnesses when appellant was not present, and were certainly not admissible, under elementary rules of evidence. The court should have sustained the objections of appellant thereto.

The other errors complained of have reference to instructions given and refused, which it is not necessary to discuss. It is sufficient to say that the instructions given by the trial court covered all the points necessary in the case, and were sufficient. We find no error in refusing the requested instructions.

It is insisted by respondents that there is no merit in appellant's case, and that upon an examination of the whole record this court will conclude that the verdict was in accord with the facts, notwithstanding technical errors may appear. Having examined the record, we agree that the weight of the evidence supports the verdict of the jury in this case, and, if we are to weigh the evidence and determine the case upon the facts, the cause should be affirmed. But it is not the province of this court to weigh

the evidence which has been passed upon by the jury. This is the function of the jury. The parties are entitled to a jury trial upon the facts unless a jury is waived (§ 21, art. 1, Constitution; § 4997, Bal. Code); and the jury, under proper instructions, must determine the facts. Where there is any substantial evidence to go to the jury, and this evidence is disputed, it is the duty of the jury, and not the court, to determine these disputed questions of fact, subject, however, to the right of the trial court to grant a new trial. *Hughes v. Dexter Horton & Co.,* 26 Wash. 110 (66 Pac. 109). Where prejudicial errors of law occur upon a jury trial, it is as much the duty of this court to reverse a case which we think is correctly decided upon the facts in evidence as it is to reverse one which we think is not correctly decided. In other words, it is not necessary for this court to determine the case upon the facts before deciding errors of law. For this reason, we cannot affirm the judgment below.

The cause will therefore be reversed for a new trial.

REAVIS, C. J., and FULLERTON and ANDERS, JJ., concur.

DUNBAR, J., concurs in the result.